RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 6/9/08

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

**DAVON GROUP, LTD.**  CIVIL DOCKET NO. 07-1976

**VERSUS**  JUDGE HAIK

**SYD DYER, JR., M.D., NATIONAL COMMUNICATIONS, INC, and NATIONAL COMMUNICATIONS, L.L.C.**  MAGISTRATE JUDGE METHVIN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## REASONS FOR JUDGMENT

**A.  Facts**

National Communications, Inc. ("NCI") was formed as a corporation in 1996. In 1998, Davon Group, Ltd. (hereinafter "Plaintiff" or "Davon Group"), Dr. Syd Dyer, Jr. ("Dyer"), and NCI entered into a Loan Agreement whereby Davon Group loaned $879,785.00 to Dyer. In 1999, Dyer executed a promissory note ("Note") in favor of Davon Group for $879,785.00 pursuant to the Loan Agreement, which identified the collateral as certain shares of stock in NCI. In April or May of 2005, NCI merged into National Communications, L.L.C., ("NCL") a Louisiana limited liability company. Sometime between May 2005 and May 2007, Dyer defaulted on the promissory note. In May 2007, Dyer allegedly tendered the NCI shares to the Davon Group.

On November 20, 2007, the Davon Group filed a complaint against Dyer, NCI and NCL, seeking to enforce the promissory note personally against Dr. Dyer. On November 28, 2007,

NCI converted from a limited liability company to NCI2, a Louisiana domestic corporation. Defendants (Dr. Syd Dyer, Jr. and NCI) filed a Motion for Partial Summary Judgment (Doc. 18), seeking to dismiss all claims against it for personal liability on the note sued upon, for fraud, and conversion of collateral. Defendants also seek a judgment for specific performance against Plaintiff, requiring Plaintiff to accept the shares in full satisfaction of the note sued upon.

**B.     Defendant's Contentions (Dr. Syd Dyer, Jr)**

Dr. Dyer insists that the Note is "non-recourse," since it specifically provides that the Davon Group "agrees that he or it shall have **no recourse** to [Dr. Dyer] or to any assets of [Dr. Dyer] other than the [NCI shares], and [Dr. Dyer] shall have **no personal liability** for the payment of the Indebtedness as provided in the Loan Agreement." Similarly, Dr. Dyer argues that the Stock Purchase Agreement refers to the Note as "**nonrecourse.**" (§1.07, Exhibit 3,).

Dr. Dyer also contends that the parties have stipulated that such a merger is a nullity, since The Stock Sale and Financing Documents provide that, if a merger is attempted without paying the Note, it is a "nullity." (§5.11 of the Loan Agreement, Def. Ex. 2). Dr. Dyer insists that the Davon Group actually conceded this point in its Complaint. (Para. 25 of the Complaint).

Dr. Dyer further argues that, even had the parties not agreed that the effect of an attempted merger was a nullity, the merger had no adverse impact on the Davon Group. Dr. Dyer alleges that the ownership interests in NCI were converted into ownership interests in NCL and the ownership interests remained pledged. (Article III, Agreement and Plan of Merger, Def. Ex. 9). He insists that no collateral was "destroyed" as claimed by the Davon Group, and claiming that the collateral was "destroyed" is merely an attempt by the Davon Group to avoid its sole

remedy (i.e. accepting return of the shares) and to enforce a remedy which it contractually abandoned (i.e. imposing personal liability on Dr. Dyer).

Dr. Dyer asserts that The Stock Sale and Financing Documents provided that, whether or not a default had occurred, he had the "absolute right" to return the shares to the Davon Group, subject to the prior security interests, in full payment of the Promissory Note. (Promissory Note, Exhibit 1; § 7.2(c) of the Loan Agreement, Exhibit 2; and § 6(a) of the Stock Pledge Agreement, Exhibit 5). The argues that the "absolute right" to return the shares in full forgiveness of the Note was conditioned on tender being "prior to Seller's taking action permitted under the Loan Agreement." (§ 7.2(c) of the Loan Agreement, Exhibit 2; Promissory Note, Exhibit 1). Pursuant to that option, on May 25, 2007, **before the Davon Group took any action "permitted" under the Loan Agreement or otherwise**, Dr. Dyer insists that he tendered the subject shares to the Davon Group as evidenced by the letter sent to and received by the Davon Group. (Affidavit of Dr. Dyer, Exhibit 7).

Dr. Dyer contends that The Stock Sale and Financing Documents require the Davon Group to cooperate in transferring the shares (§ 9.02 of the Bill of Sale, Exhibit 4; § 16 of the Stock Pledge Agreement, Exhibit 5; and § 7(c) of the Escrow Agreement, Exhibit 6) and specifically appointed the Davon Group as the agent of Dr. Dyer to effect the transfer (§ 10 of the Stock Pledge Agreement, Exhibit 5). In that he had irrevocably appointed plaintiff attorney-in-fact to effect the stock transfer (§ 10 of the Stock Pledge Agreement, Exhibit 5), Dr. Dyer contends that he was and is precluded from taking further action to do so. Therefore, he insists that he is entitled to specific performance, requiring the Davon Group to accept return of the

stock and cancel the subject note, subject to the other terms of the stock Sale and Financing Documents.

Lastly, Dr. Dyer insists that he did not commit fraud. Had he intended to defraud the Davon Group, Dr. Dyer would not have tendered the NCI shares to the Davon Group six months before the complaint was filed. (Def. Ex. 7, letter from Benjamin Mount).

### C. Plaintiff's Contentions (Davon Group, Ltd.)

Plaintiff contends that questions of material fact remain regarding the affect of the merger of NCI and NCL, the conversion of NCL into NCI2, and Dyer's intent behind destroying the original NCI shares, thus destroying Davon Group's primary recourse against Dyer for default of a promissory note and breach of a loan agreement.

Plaintiff argues that the Plan of Merger statement regarding shares clearly and unambiguously states that there was no plan in place to transfer shares, convert shares, or otherwise account for their existence. As a result, the Plan of Merger explicitly destroyed the stock of NCI, which was the collateral held by the Davon Group. (Pl. Ex. A). Plaintiff insists that the true effect of the merger was to dissolve NCI, strip the Davon Group of its collateral, and place all ownership interest of NCL into its sole members, Dyer and Lester Langley, Dyer's business partner.

Plaintiff alleges that, at the time of the merger, Dyer was the majority member of NCL and thus received the majority of benefits and obligations of NCI personally following the merger. By causing the shares to be cancelled and retired, Plaintiff insists that Defendant destroyed the collateral held by Plaintiff and the NCI stock shares could no longer be returned

-4-

because they did not exist. (Pl. Ex. A). Therefore, when Defendant breached the Loan Agreement by merging NCI with NCL, he personally obligated himself for repayment of the amounts then due as "Purchaser" of the shares under the Loan Agreement.

Plaintiff further alleges that NCL, as the surviving entity of the NCI/NCL merger, generally is liable for each of the merged entities as if it had incurred those liabilities. Plaintiff insists that the damages sought against Dyer are for payment of a debt owed. Plaintiff argues that NCL did not accept the liabilities of Dyer, nor did the cancellation and retirement of NCI stock affect the ability of NCL to continue as the surviving company. Therefore, Plaintiff contends that Dyer's orchestrated merger accomplished the destruction of the object of performance for Dyer to make whole the Davon Group's debt.

Plaintiff insists that once the merger was complete and the former shares of NCI were cancelled and retired, the Davon Group's collateral securing the Promissory Note and Loan Agreement was destroyed. The return of the shares became impossible because there were no shares to return according to Plaintiff. Therefore, Plaintiff argues that it, as obligee in the Loan Agreement, is the party entitled to recover damages for Defendant's failure to perform. *La. CC art. 1994*.

Plaintiff also argues that there was no valid tender as Defendant alleges. Plaintiff contends that such a tender was impossible because the shares did not exist at the time of tender. Plaintiff insists that the clear language of the Plan of Merger precludes the tender because all shares of NCI were cancelled and retired, and neither the corporation nor the shares of stock in the corporation continued to exist. (Def. Ex. 9).

Plaintiff contends that the conversion of NCL to NCI2 did not resuscitate the defunct corporation, and that Dyer's reliance on the conversion is misplaced. Plaintiff does not dispute that entities in Louisiana are allowed to convert to any other form of entity. However, Plaintiff contends that conversion is clearly different than a merger. In a conversion, the entity continues merely in another form whereas in a merger, one of the merging entities is dissolved. Plaintiff alleges that the conversion of NCL to NCI2 did not "convert back" to NCI, but rather, the conversion created a continuing NCL entity under a new domestic form.

Finally, Plaintiff contends that questions of fact remain regarding Dyer's intent. Plaintiff alleges that the supporting affidavit of Dyer and Lester Langley do little to disprove that the merger was for the sole purpose of destroying the security held by Davon. Therefore, Plaintiff insists that this Court must deny summary judgment in accordance with Rule 56(f).

### D.  Analysis

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Federal Rules of Civil Procedure 56(c)*.

In this case, the Davon Group, Dr. Syd Dyer, Jr. and NCI entered into a Loan Agreement whereby the Davon Group loaned $879,785.00 to Dyer. In 1999, Dyer executed a promissory note ("Note") in favor of the Davon Group for $879,785.00 pursuant to the Loan Agreement, which identified the collateral as certain shares of stock in NCI. The contract is the law between the parties, and no further interpretation may be made in search of the parties' intent when the

words of the contract are clear, explicit and lead to no absurd consequences. *Terrebonne Parish School Board v. Columbia Gulf Transmission Co., 290 F.3d 303 (5th Cir.2002).* Therefore, this Court looks to the language of the Promissory Note (Def. Ex. 1), the Loan Agreement (Def. Ex. 2) and the Stock Purchase Agreement (Def. Ex. 3) to determine whether or not Plaintiff can enforce the Note personally against Dr. Dyer.

The Promissory Note executed by Dr. Dyer on March 12, 1999 states:

"***Holder*** agrees that he or it shall have ***no recourse*** to the maker or to any assets of the Maker other than the Collateral, and ***Maker*** shall have ***no personal liability***, for the payment of the Indebtedness as provided in the Loan Agreement."
(See Promissory Note, Def. Ex. 1, pg. 1).

The Loan Agreement further states:

"...that anything in this Agreement, or in the Stock Pledge Agreement or any other agreement to which any Seller is a party to the contrary notwithstanding, Purchaser shall have ***no personal liability*** to Seller for any Indebtedness. ***No Seller shall have recourse*** to ***Purchaser***, or to any of Purchaser's assets other than the Collateral, for the payment of the indebtedness to Seller.." (§5.1 of the Loan Agreement, Def. Ex. 2)

The Stock Purchase Agreement also states:

"The six ***nonrecourse*** promissory notes from the Purchaser to each of the Sellers, to be executed and delivered at Closing pursuant to this Agreement." (Def. Ex. 3; §1.07 of the Stock Purchase Agreement)

After reading the aforementioned clauses, it is clear that the Davon Group, as "Holder" or "Seller," agreed that it shall have "no recourse" to Dr. Dyer or his assets, other than the collateral. It is also clear that Dr. Dyer, as "Maker" or "Purchaser," agreed that he shall have no personal liability. Therefore, "the words of the contract are clear, explicit and lead to no absurd consequences," and this Court finds that Plaintiff cannot enforce the Note personally against Dr. Dyer.

Furthermore, The Promissory Note provides that "...***Maker*** shall have the absolute ***right to convey the Pledged Securities*** (as provided in the Stock Pledge Agreement) ***to Holder***...." (See Promissory Note, Def. Ex. 1, pg. 4). The Loan Agreement further provides that "...***Purchaser*** shall have the absolute right to return to the ***Seller*** the Seller's shares acquired by Purchaser from Seller...". (See § 7.2(c) of the Loan Agreement, Exhibit 2). Based on the Promissory Note and Loan Agreement, this Court further finds that the Davon Group's sole remedy upon nonpayment or any other default is for Dr. Dyer, as "Maker" or "Purchaser," to return the pledged stock to the Davon Group.

Plaintiff also contends that the merger destroyed the collateral. However, the merger had no adverse impact on the Davon Group. The ownership interests in NCI were converted into ownership interests in NCL and the ownership interests remained pledged. As such, the collateral was not destroyed.

Finally, no genuine issue of material fact exists regarding fraud. Fraud is the misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other party. *C.C. art. 1953.* In this case, as shown by the affidavit of Lester Langley (Def. Ex. 17), the merger was not effected for fraudulent purposes in an effort to "destroy the security held by Davon Group." Rather, it was merged into a limited liability corporation in order to save franchise taxes. (Affidavit of Lester Langley; Def. Ex. 17). Plaintiff does not offer any evidence to make this Court find otherwise. Therefore, there is no genuine issue of material fact.

E.  **Conclusion**

For the reasons set forth above, it is hereby Ordered, Adjudged and Decreed that Movers' Motion for Summary Judgment (Doc. 18) is hereby **GRANTED**. Furthermore, Defendant is entitled to specific performance, requiring the Davon Group to accept return of the stock and cancel the subject note, subject to the other terms of the stock Sale and Financing Documents.

THUS DONE AND SIGNED in Lafayette, Louisiana, on this the 9th day of June, 2008.

CHIEF JUDGE RICHARD T. HAIK, SR.
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA